IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. ROBERT LOVE, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| LIFE UNIVERSITY, INC., | |
| Defendant. | |

## COMPLAINT

COMES NOW, Dr. Robert Love ("Plaintiff" or "Dr. Love"), by and through his undersigned counsel, and files this, his Complaint and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant Life University, Inc. ("Defendant") for violations of his rights under the Age Discrimination in Employment Act of 1967, as amended ("ADEA") and the False Claims Act, at 31 U.S.C. 3730(h).

1

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 29 U.S.C. §216(b), and 28 U.S.C. §§ 1343.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 29 U.S.C. §216(b), venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under the ADEA. Plaintiff timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 12, 2023. The EEOC issued its Determination and Notice of Rights on April 23, 2024. Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## PARTIES

5.

Plaintiff is a male citizen of the United States of America and is subject to the jurisdiction of this Court.

6.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

7.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADEA.  Defendant is now and, at all times relevant hereto, has been a non-profit entity engaged in an industry affecting commerce. During all times relevant hereto, Defendant had employed twenty (20) or more employees for the requisite duration under the ADEA.

## FACTUAL ALLEGATIONS

8.

The Plaintiff began working for the Defendant in or around August 2020 as a Clinician. Approximately six (6) months later he was promoted to Assistant Director of Clinics.

9.

During the last year of Plaintiff's employment, he provided information in support of numerous age-based discrimination complaints against the Defendant.

10.

Around December 2021, Executive Director, Teri Stockwell began to ask the Plaintiff questions about who the oldest employees were within his division, who needed to be "managed out", and if they were eligible for Medicare, as she was seemingly trying to age them out of their positions. Those employees were Dr. Steve Bloomingdale and Dr. Dan Michel.

11.

The Plaintiff reported this to HR personnel, Monica Ward, because the conversation with Director Stockwell made him extremely uncomfortable.

12.

Director Stockwell also made age discriminatory comments against Dr. Joe Haezebrouck, specifically, to get rid of him because he was too old. The Plaintiff was interviewed by Dr. Haezebrouck's attorney regarding this matter as well as two (2) Human Resources employees, Monica Ward and HR Director Lisa Reed.

13.

Plaintiff was interviewed in the various complaints against Dr. Stockwell and she was demoted to Faculty Clinician before the employees could be fired.

14.

Plaintiff began applying to various positions with the Defendant but noticed that he was being professionally isolated and targeted by Dean Michael Clusserath. He initially reported this to HR in or around August 2022 and numerous conversations with HR regarding this matter followed.

15.

Specifically, Dean Clusserath began to have private meetings with Vice President of Academic Affairs, Dr. Jana Holwick and also excluded the Plaintiff from leading clinic council meetings and trainings, even though he had led the clinic trainings almost exclusively for a year. Further, Dean Clusserath began to distance himself from the Plaintiff, no longer having lunch with him weekly or having their daily meetings, even though both of these events occurred for the past year.

16.

Dean Clusserath also interfered with the formal hiring process for the Director of Clinics position the Plaintiff applied for. He engaged with the hiring committee behind closed doors, which eventually got back to the Plaintiff. He reported Dean

Clusserath's actions to HR, who scheduled a new round of interviews, however Dean Clusserath and Dr. Holwick had the ultimate hiring authority.

17.

The day the Plaintiff was to interview for the Director position, Dean Clusserath and Dr. Holwick put the Plaintiff on paid administrative leave without warning, for alleged Medicare fraud. He was not allowed to speak with anyone; required to surrender all his access; including email, told to turn in his keys and identification for approximately a week.

18.

HR investigated and found no wrongdoing by the Plaintiff.

19.

During the Medicare fraud investigation, the Plaintiff felt compelled to report that Dean Clusserath was involved in a Medicare fraud coverup. Specifically, Medicare was billed for work completed by two (2) different doctors. One of those doctors did not want their services billed to Medicare, so they called the service "wellness care" and billed to the patient, in violation of Medicare regulation.

20.

Dean Clusserath covered it up and deleted all records of the act. The doctor in question is a friend of Dr. Clusserath, so he transferred the doctor to another

department to keep him from having to credential and comply with insurance protocol.

21.

During this same time, retired employee, Dr. Robert Rectenwald, decided he wanted to return to work in a part time capacity and began the application process.

22.

The Plaintiff spoke numerous times with Dr. Rectenwald regarding the application process. He gave his support and ensured he had the right link to the application. Once Dr. Rectenwald applied, the Plaintiff could not see his application in the system, so he encouraged him to follow up with HR.

23.

On or around August 4, 2022, Dr. Rectenwald interviewed with the committee, which included Assistant Professor/Faculty Clinician, Dr. Paul Donaldson. After the interview, Dr. Donaldson emailed the Plaintiff to inform him that he and the interview committee recommended Dr. Rectenwald, with no concerns, to be advanced in the hiring process to an in-person/skills interview. A candidate being recommended with "no concerns" is significant because the committee listed concerns for the other candidates that were hired by the Defendant.

24.

Dr. Love provided his and Dr. Donaldson's recommendation to advance Dr. Rectenwald to Dean Michael Clusserath for consideration.

25.

Dean Clusserath verbally stated to the Plaintiff, "Look Rob, he's retired and he needs to just stay retired. It's weird for me to say because I'm an old guy, but he's too old and slow to be here anymore. We finally got that element out of here and were not looking to bring it back." It was apparent that Dean Clusserath believed that Dr. Rectenwald was too old to be hired, despite his qualifications. This comment made the Plaintiff very uncomfortable.

26.

The Plaintiff went to Dr. Finnegan to inform him of his conversation with Dr. Clusserath. Dr. Finnegan told the Plaintiff they were in a new time, and he needed to learn his place in the chain. The Plaintiff also emailed Finnegan to document Dean Clusserath's comment regarding Dr. Rectenwald.

27.

Dr. Finnegan did not respond or acknowledge the Plaintiff's email.

28.

Around September 2022, Dr. Finnegan was officially named Director of Clinics. The Plaintiff was now excluded from all meetings, even when he asked to be included. Dr. Finnegan began having weekly meetings with the Plaintiff to discuss his duties or behaviors. Dr. Finnegan also had an ongoing digital document he referenced each week where he asked about the Plaintiff's whereabouts and why he'd spoken to certain people.

29.

Defendant did some "restructuring" earlier in the year, which involved the Defendant's placement of employees found guilty of wrongdoing, during which at least of these employees were placed into different positions and/or permitted to apply for such positions.

30.

On October 5, 2022, the Plaintiff was informed by Dr. Holwick and Lisa Reed, Director of HR, that the division was "restructuring" and he was given thirty (30) days' notice that his position was being eliminated. Plaintiff was reassured that he was fully in his position and authority through the 30 days, to continue with his normal responsibilities, and was led to believe he would be moved to another position.

31.

On October 21, 2022, Director Finnegan emailed the Plaintiff to inform him that he needed to work remotely because he needed his space for administrators who were working on current clinic projects. He was to also remove all his personal belongings.

32.

Unknown to the Plaintiff at the time, Dean Clusserath and Dr. Holwick went to Director Reed and informed her they wanted to do some "restructuring" of the Clinic's division, by solely removing the Plaintiff's position.

33.

Unknown to the Plaintiff at the time, Reed informed them that in order for restructuring to occur, that would require three (3) positions to be removed from a division. Reed further stated they could not restructure and only remove one person; they would have to remove at least three (3) positions.

34.

As a result, Director of Clinic Business, Tammy Cagle, who also spoke out against leadership via investigations, was notified that her position was being eliminated. Another vacant position within the division was also eliminated.

35.

On or around November 2, 2022, the Plaintiff inquired about what position he would be receiving and discussed the matter with HR Director Reed. She informed the Plaintiff the "restructuring" was a ruse by the Defendant to terminate him from his position.

36.

Plaintiff's last day was November 4, 2022.

37.

Director Reed emailed the President, Dr. Rob Scott, to seek approval to hire the Plaintiff as a consultant. The email mentioned the strategy to insulate all of the "politics" involved and referenced Vice President Bill Jarr. No response to Dr. Reed's request was provided.

38.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pretext. Plaintiff was treated less favorably in the terms or conditions of employment than others outside of his protected class and was terminated from his employment because of his opposition to age discrimination and Medicare fraud.

## CLAIMS FOR RELIEF

## COUNT I:  RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED

39.

Plaintiff re-alleges paragraphs 9-38 as if set forth fully herein.

40.

Plaintiff engaged in protected activity when he participated in investigations of complaints of age discrimination.

41.

Defendant retaliated against Plaintiff by terminating his employment as a result of Plaintiff's protected activity.

42.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide its retaliatory motive.

43.

Defendant's retaliatory actions against Plaintiff were in violation of the ADEA.

44.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its retaliation against Plaintiff was undertaken in bad faith.

45.

As a result of Defendant's retaliatory actions against Plaintiff, Plaintiff has suffered lost compensation and benefits.

46.

Pursuant to the ADEA, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, equitable relief, attorneys' fees, costs of litigation, and all other relief recoverable under the ADEA.

### COUNT II:  RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT, 31 USC § 3730(h)

47.

Plaintiff re-alleges paragraphs 9-38 as if set forth fully herein.

48.

Plaintiff engaged in protected activity when he participated in an investgiation of Medicare fraud and revealed Defendant had engaged in the submission of false claims to the United States government in connection with Medicare reimbursement.

49.

Defendant retaliated against Plaintiff by terminating his employment as a result of Plaintiff's protected activity.

50.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide its retaliatory motive.

51.

Defendant's retaliatory actions against Plaintiff were in violation of the False Claims Act, at 31 U.S.C. § 3730(h).

52.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its retaliation against Plaintiff was undertaken in bad faith.

53.

As a result of Defendant's retaliatory actions against Plaintiff, Plaintiff has suffered lost compensation and benefits.

54.

Pursuant to the 31 U.S.C. § 3730(h), Plaintiff is entitled to damages including but not limited to reinstatement with the same seniority status that he would have had but for the unlawful retaliatory discrimination, 2 times the amount of back pay,

interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) Back pay and benefits of employment, plus an equal amount of liquidated damages;

(b) Reinstatement with the same seniority status that he would have had but for the unlawful retaliatory discrimination or front pay in lieu thereof,

(c) Two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights; and

(i) All other relief to which he may be entitled.

Respectfully submitted this 8th day of May, 2024.

                                      **BARRETT & FARAHANY**

                                      s/ *Matthew C. Billips*
                                      Matthew C. Billips
                                      Georgia Bar No. 0557110

                                      *Counsel for Plaintiff Dr. Robert Love*

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
matt@justiceatwork.com